May it please the Court, Amy Prokop on behalf of the petitioner Raul Coronado-Hidalgo. I'd like to focus my comments this morning on what I think is the most important issue in this case, and that is whether the fraud waiver of Section 237A1H is available to waive marriage fraud. The waiver is a humanitarian measure that was enacted in order to essentially forgive certain fraud or misrepresentation that was committed in connection with an alien's application for permanent residence or in the United States. And it was in order to promote family unity, it requires that the alien have a close family member who is either a U.S. citizen or child or parent. Mr. Coronado has lived in the United States for approximately 25 years. Could I interrupt you just for a moment with a question I was struggling with? And we got the 28J letters on Vasquez. And Vasquez has in a footnote, we do not consider here cases in which the alien gained admission into the United States on some basis other than marriage, but later married and then adjusted their status. So Vasquez wasn't applicable. It held the question open because here I believe the petitioner went in on a visa, right, a nonimmigrant visa. Is that right? Yes, that's my understanding, that Mr. Coronado entered the United States on a visitor visa and then later adjusted his status to occasional residence. So then when I looked at the waiver in H, it talks about that it's applicable to the removal of aliens on a ground that they were inadmissible at the time of admission as aliens. And then there is some cases reviewing the prior fraud waiver, 241F, suggesting that this waiver is only applicable to people who came in on the basis of their marriage, which later turned out to be fraudulent. So help me understand how that language applies here. That's what I was struggling with. Okay. Well, adjustment of status is essentially a procedural mechanism by which people can obtain permanent residence. It used to be that individuals would have to always apply for their visas at consulates abroad and then enter as a permanent resident or conditional resident. And then adjustment of status was created in order to enable them to remain in the United States and still obtain that status without having to depart. Historically, and I believe there's case law that does support this, adjustment of status has been treated as an admission. You are admitted as a permanent resident when your status is adjusted. And it's been treated as such in connection with various other waivers. In the Virk case that Virk v. INS that was cited that discussed whether the fraud waiver would be available for the marriage fraud grounds, it was under the predecessor statute, but I don't think that there's that big of a distinction. The alien in Virk had initially entered the United States and then subsequently adjusted his status. It didn't say what the basis was of his admission and didn't have any. I was looking at that one. And they didn't have any language at all discussing that fact. So I wasn't sure exactly what to make of Virk in that context. It didn't seem to weigh one way or the other. Well, I would agree that it doesn't say the exact manner of his entry. I suppose it could have been. Can I just refine that a little bit? I was struck by the same question Judge Yakuta had. And I'm looking at Vasquez. And at page 1011, when the court is going through the analysis of the language of the statute, it's talking about section 237A1H provides that, quote, the provisions of this paragraph relating to and so on. Judge Berzon goes on. And then she, in that same paragraph, she says, this paragraph, quote, this paragraph refers to section 237A1, which sets out six grounds of removal under the heading of inadmissible at time of entry or of adjustment of status or violates status. I just noticed this this morning. So I haven't tracked it back in to find out if that's consistent with what you're now arguing, is that inadmissible at time of entry or inadmissible at time of adjustment of status deals. Because Vasquez is very clear about talking about, as Judge Yakuta said, inadmissible at time of, you know, the marriage was, even if it's decided two years after they got here or she got here, retrospectively, with the marriage fraud, she was inadmissible when she actually came into the United States. So is that portion that I'm quoting, does that give us any hook within the I think it does, Your Honor. And it's something that I was going to mention, that the fraud waiver provision at subsection H is under that broader paragraph that's entitled aliens who are inadmissible at the time of their entry or adjustment of status. And I understand that the So what does it mean if that H doesn't have anything about adjustment of status? Is there a way of interpreting this? When I went and looked at the definition of admission, it just talks about entry. It doesn't talk about adjustment of status. Right. Well, again, I think that would go back to the line of cases that have defined adjustment of status as an admission. And, you know, this particular issue, you know, the judge and the board didn't say that Mr. Coronado isn't eligible for the waiver because he adjusted his status within the United States. So, I mean, if the Court is interested, I'm happy to provide a supplemental briefing on this question. On that question. Let me, just in that vein, in matter of Connolly, which was done, it's a BIA decision on the 241F, which, as you note, is similar, not identical. And there they specifically said the marriage waiver, this marriage fraud waiver, fraud waiver doesn't apply to adjustment of status. It only applies to entry. And that used the word entry, but since admission is defined to mean entry, I'm not sure it was distinguishable. How should we deal with that interpretation? Matter of Connolly? I believe that's the name of it, yes. Was that a decision that predated the amendment of that? That was under the old 241F, but it didn't seem to be fairly applicable. It wasn't clear to me what the distinction would be. Well, I think the distinction is that when the statute was revised, it spoke in terms of not only entry, but also admission and adjustment of status. And by including the phrase adjustment of status within that broader paragraph that 237A1H operates under, it follows that aliens who adjusted their status through fraud or misrepresentation would also be able to take advantage of that waiver. And it's been consistently applied that way throughout. In my experience, I've always seen it applied that way, and I've never had a judge tell me that my client is not entitled to the waiver because of his adjustment as opposed to being admitted as a permanent resident. Is there a precedential BIA opinion that provides that interpretation? I only found Connolly. There are precedential decisions in other contexts that deal with other waivers. I'm not aware if there's one that's addressed the narrow issue that we're looking at here and that VASCA's noted in its footnote in that decision. So, again, perhaps that's something that would be appropriate for either supplemental briefing or, you know, a remand to allow the Board to make that determination in the first instance. You have about 45 seconds left. Do you want to reserve? Sure. Thank you. Good morning. Kate Balaban for the government. Let me begin by apologizing because I think our brief, we were right, but it probably I think we might have lost the force for the treason. It wasn't until we saw VASQA's in footnote 12 that we realized that that was the case. I think the Board, the agency was right here that neither the G charge, the marriage fraud charge, or the D charge, which is the revocation, are waivable under H. And actually, the I.J., in her opinion, if you look at the record of 193.194, explains that since there was no 212a6 charge here, which is, relates to general inadmissibility, that there can be no H waiver. And the Petitioner was not charged with being inadmissible at the time of entry. And, in fact, as you point out, Your Honor, he wasn't. H deals with issues that arise under 212a6c. That is what the I.J. said. And the Board adopts and affirms that. I mean, it seemed that even though that they were basing their determination on a ground that VASQA's may cast some doubt on, and they weren't basing it on the Do you disagree with that? No, I don't disagree, but I think that the grounds are so closely related, because what the Board, the I.J. clearly was saying that H doesn't apply because he, because there's no charge of inadmissibility at entry. The I.J. says that. The Board just adopts and affirms and talks about the marriage fraud statute generally. And then we then, the briefs then focus on whether or not the D charge can be waived under the line of cases of Guerin, VASQA's, Reed, so forth. These all, these cases all concern the issue of whether or not a second charge, which is related, is related enough to the underlying fraud charge to be susceptible to an H waiver. And those cases, Your Honor, those all deal with entry fraud. So the question is, where there's fraud on entry and then a subsequently lodged charge that relates to the fraud on entry, is the subsequently lodged charge waivable? That's what those line of cases deal with. And as VASQA's points out in footnote 12, they don't, they simply don't address the issue of where there's no fraud on entry, which is what we have here. Kennedy, what's the rationale for drawing that distinction? If somebody procures admission and then, by fraud, they get the benefit of fraud waiver, but somebody who comes in lawfully and then does the fraud within the United States, somehow it's a different regime. And that, that's come up. Let me, before I get to the rationale, let me cite first the language of H. The language of H supports this position. Well, I'm looking for the language of H. Would you mind addressing Judge Fischer's question? That's why I'm asking the question. And then before, and then also I want to point out to you that there's authority right on point. There's authority in this circuit right on point. If you look at Kajanuri, which is a, the site is 460F2nd461. How do you spell that? K-H-A-D-J-E-N-O-U-R-T. Right. That's Priorura. Yes, but the language But now, would you mind getting back to Judge Fischer's question, because I share the same question. Why is, why do you think, rationally, if Congress starts off wanting to grant a humanitarian exception, why would they say it's available to somebody in a foreign country, but not to a similarly situated person in the United States? I understand. I think the rationale is that this H waiver, the reason that it relates only to entry is because it deals with the instance where you have this person who enters and makes this mistake, and he commits this one fraud. And then subsequently, years later, he comes here, and he finds someone, and they're legitimately attached. But in this case, we have a pattern of illegal conduct. This person came here, he overstayed, he then entered into a fraudulent marriage, he then repeated the fraud when he applied for the conditional license. Now, let's assume that they're identically situated, because you seem to want to draw a distinction on the facts. We're talking about statutory interpretation. What's the rationale between treating people who stay in foreign countries, as Vasquez, and people in the United States who are, let's assume that the facts are identical, what's the rationale for treating them differently? Because the Supreme Court recently has dealt with that kind of situation and said that's irrational. Well, Your Honor, we've discussed this internally. We relied on the language. I think the rationale is that this waiver was intended to only apply to fraud at entry. And the other thing is that the Supreme Court has said it's designed to prevent deportation of refugees from totalitarian nations for harmless misrepresentations made solely to escape persecution. And that says the escape from persecution occurs when the alien first enters to the United States, not when an alien adjusts status. But that was for 241F. Would the same rationale apply now that Congress has revised the statute or amended the statute? So that escape from persecution rationale? I mean, that 241F was much earlier than this statute. I mean, I think it could. I think that same rationale could apply. But I really think the simple answer here is that the board, the I.J., were just relying on the language of the statute. So if one finds this issue troubling in terms of the rationale, then perhaps we should let the board clarify before we go out on any limbs. Well, that was my next question. Vazquez has created some doubt on our other cases. It's clear Vazquez reserved this issue. But we have, as Judge Ikuda mentioned, we have Connolly, which is your earlier decision from 84, pre-Arrera. We have Edpa and Arrera, which changed the structure of this and maybe changed the notion of admissibility. I assume that you support a remand to the board to sort this out in light of Vazquez? I wouldn't say that we would support a remand, because I actually think this Ninth Circuit case, Cajonor, is on point, and that nothing about the statutory scheme that's been changed should change that result. And that case relies on or cites a Sixth Circuit case, Ferrante, which is also an old case where there's an Italian. All this is pre-Arrera where you had deportation and exclusion as two different remedies. I'm not sure that makes any kind of substantive analytical difference here, Your Honor. I think that the H waiver was tailored specifically, the language of it, to deal with fraud at entry, and that's what these cases cite. That's the statute, and the board has gone along with it. So I guess in the end, I would say we would support a remand if you think that there's So you think if we're going to award relief, a remand. If we don't, an award relief, you don't want a remand. Is that sort of the government's position? Well, I think that the language of the statute is clear and supports our position. Can I get you to address the language of the statute and counsel's argument that adjustment of status is covered? H provision says inadmissible at the time of admission as aliens described in section 1182A6CI of this title. How does that read on the argument that that would extend to someone who's now being inadmissible at time of adjustment of status? In other words, what is an alien described in that section? Because trying to jump around the statute. It is really difficult. But what I would struck by this morning was that H says inadmissible at the time of admission, and yet if you refer back to A, it says at the time of entry or adjustment of status. So clearly Congress could have, if they had wanted to, put into the H waiver that language. They knew how to do it. And the other, the counterargument is that in a whole series of cases, adjustment is considered a second admission. But we have a series, there's a series of cases. I'm sorry. A series of cases where they say. Just wait a minute. Just to make Justice Thomas's point. It doesn't say. It says inadmissible at time of entry or adjustment of status. H doesn't say at time of entry. It says admission. Time of admission. Right. But admission under 8 U.S.C. 1101A13A is the law, defined as the lawful entry of the alien into the United States. Right. Counsel, I think you can see that there are a series of cases that refer to adjustment of status as an admission. And here, if Congress could have said, use the same language, but instead of saying entry and adjustment, it said admission. So the other contrary interpretation is it was referring to both. That's the ‑‑ I take your point, but there's also a counterargument to that. Okay. And I just want to point out before we finish that the VRT case was designed ‑‑ the alien there, you're right, Your Honor, that they didn't discuss, the court didn't discuss this issue of fraud at entry or fraud after entry. But the alien was charged in that case under 212, which states that he was excludable at entry. So I don't think the VRT case is authority for the contrary reading of the statute. The other point about remand here is that we would argue it would be futile, given the finding of the moral character issue, because in order to qualify for an age waiver, this alien needs to show that he has good moral character, and the I.J. has already found that he doesn't for purposes of cancellation of removal. But where's the proof that the ‑‑ his putative wife was actually there? The I.J. speculated that ‑‑ I don't ‑‑ our position is that ‑‑ Judge Fisher, may I ask this question before you answer? Pardon me. I'm sorry. There is no proof. That's what the I.J. read into the situation. We would ‑‑ and as we briefed, we think that was reasonable. That was reasonable, and it was supported by ‑‑ By speculation. I mean, we think it was a reasonable conclusion, and that under the standard of review, it's supportable. But even if it weren't, even if he were to decide that the recantation had not been ‑‑ in her view, the recantation hadn't been sincere under that standard, it would still be upheld on that basis. It should still be upheld by this Court. That's for the I.J. to decide. And there was certainly adequate basis in the record for the I.J. to have concluded as much. So our position would be that to remand would be futile from that standpoint. Okay. Our questions are taking you over your time. Any further questions from the panel? Okay. Thank you, counsel. Thank you so much. So in my remaining 40 seconds, I guess I'd just like to point out on this issue of whether adjustment of status can be an admission. And the focus in section H about aliens who are described under section 212A6C, that the fraud or misrepresentation section. An alien who is applying for adjustment of status here in the United States has to meet the requirements of section 212 before their application is granted. And so, of course, Mr. Coronado, by committing misrepresentation, necessarily falls within the section of inadmissibility at the time that his adjustment application was submitted and decided. And I think that's an important point to note here. What's your response on the futility argument? With regards to the good moral character, I do not see anywhere in the H waiver provision a requirement that an individual establish good moral character. It's simply a balancing between the negative and positive factors, and it's a completely discretionary thing. But there is no requirement that somebody establish good moral character like there is for voluntary departure and like there is for cancellation of removal. So I don't think it would be futile at all. And I think his case should be remanded for a consideration of the waiver on the merits. All right. Thank you. Thank you, counsel. Thank you. Thank you both of you for your arguments. Interesting question, and we will ponder it in case it just is submitted for decision.
judges: Thomas, Fisher, Ikuta